John C. Whipple (JCW 1591)
David W. Fassett (DWF 1636)
ARSENEAULT WHIPPLE FASSETT & AZZARELLO, LLP
560 Main Street
Chatham, NJ 07928
(973) 635-3366
Attorneys for Defendant MMS-A Medical Supply Co.

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
NEWARK VICINAGE

| | | |
|---|---|---|
| IRENE KIRK CALO, individually and on behalf of all others similarly situated, | : | Civil No. |
| | : | |
| Plaintiffs | : | ELECTRONICALLY FILED |
| | : | |
| v. | : | |
| | : | |
| RAM MEDICAL, INC., AMERIMED CORP., HENRY SCHEIN, INC., MARATHON MEDICAL CORP., MEDLINE INDUSTRIES, MMS-A MEDICAL SUPPLY CO., Q-MED CORP., C.R. BARD, INC., AND ABC MFG., 1-20 | : | |
| | : | |
| Defendants | : | |

**NOTICE OF REMOVAL AND REQUEST FOR ASSIGNMENT**

TO THE CLERK OF THE COURT:

PLEASE TAKE NOTICE that defendant MMS-A Medical Supply Co. ("MMS"), through the undersigned counsel, hereby (1) removes to this Court the state court action described below, pursuant to 28 U.S.C. §§ 1446 and 1453, and (2) requests that this action be assigned as a related case to the Honorable Dennis M. Cavanaugh, U.S.D.J., pursuant to Local Civil Rule 40.1(c), by stating as follows:

1.      On October 13, 2011, this purported civil class action ("the Class Action") was instituted in the Superior Court of New Jersey, Law Division, Passaic County under Docket No.

PAS-L-4679-11 by a Complaint bearing the above caption and entitled "Class Action Complaint" ("the Class Action Complaint").

2.     On November 22, 2011, MMS received via service a Summons and a filed copy of the Class Action Complaint. This Notice of Removal is timely filed within thirty (30) days after that date. See 28 U.S.C. § 1446(b).

3.     Attached hereto as Exhibit A are copies of all process, pleadings and orders in the Class Action which were served upon MMS. See 28 U.S.C. § 1446(a).

4.     This Court has original jurisdiction of the Class Action under 28 U.S.C. § 1332(d)(2)(A), which provides that "[t]he district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which [] any member of a class of plaintiffs is a citizen of a State different from any defendant []." In that respect:

    a.     "[T]he term 'class action' means any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B). Here, the Class Action Complaint alleges that this is "a Class Action pursuant to Rule 32 [sic] of the New Jersey Rules of Court." (Class Action Complaint at 3 ¶ 9);

    b.     "In any class action, the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs." 28 U.S.C. § 1332(d)(6). Here, without conceding the factual or legal validity of the plaintiffs' damages claims, MMS acknowledges that the aggregate sum or value of the individual

class members' claims, as pled, exceeds $5 million, exclusive of interest and costs. In that respect, the Class Action Complaint:

    i.   Defines the purported class as "[a]ll persons in the United States who had defendants' counterfeit surgical mesh surgically implanted from September 1, 2007 until the present time" and alleges that "the members of the class exceeds [*sic*] one thousand (1,000) individuals." (Class Action Complaint at 8 ¶¶ 21-22);

   ii.   Alleges that "[e]ach of the plaintiffs claim that they have sustained physical, mental, and/or emotional injuries, fright, inconvenience and interruption of or intrusion into their personal lives, and economic damages including loss of income." (Class Action Complaint at 10 ¶ 25);

  iii.   Seeks further economic damages representing the entire "premium price" the class members' allegedly paid for surgical mesh which allegedly had "no value whatsoever," as well as "costs to repair the damages" caused by the defendants' alleged conduct. (Class Action Complaint at 14 ¶¶ 44 and 46); and

  iv.   Demands, in addition to the foregoing personal injury damages and economic damages, as well as other forms of relief, disgorgement of all profits derived from the defendants' alleged conduct; treble damages under the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 *et seq.*; and attorneys' fees. (Class Action Complaint at 23-24).

Because the purported class allegedly exceeds 1,000 individuals, an average claim value of just $5,000 per individual class member would satisfy the $5,000,000 amount-in-controversy requirement. Given that each individual class member seeks personal injury damages and economic damages as described above, plus additional relief including without limitation disgorgement of profits, treble damages, and attorneys' fees, the requisite average claim value of $5,000 is easily met, and the $5,000,000 amount-in-controversy requirement is therefore satisfied; and

c.   "Citizenship of the members of the proposed plaintiff classes shall be determined for purposes of paragraphs (2) through (6) as of the date of filing the complaint []." 28 U.S.C. § 1332(d)(7). Here, at least one class member is a citizen of a State different from at least one defendant because the Class Action Complaint alleges that the named plaintiff, Irene Kirk Calo, resides in the State of North Carolina and that MMS is a Missouri corporation with a principal place of business in Missouri, (Class Action Complaint at 3 ¶ 8 and 6 ¶ 15) Indeed, it appears that the named plaintiff is a citizen of a State different from all of the defendants because the Class Action Complaint alleges that none of the defendants is either incorporated in, or has its principal place of business in, the State of North Carolina. (Class Action Complaint at 4-6 ¶¶ 10-16).

5.     Neither of the potential exceptions to this Court's original jurisdiction prescribed in 28 U.S.C. § 1332(d)(5) applies to the Class Action. Specifically:

    a.   None of the defendants, much less the "primary" defendants, named in the Class Action Complaint is a State, State official, or other governmental entity against whom this Court may be foreclosed from ordering relief. <u>See</u> 28 U.S.C. § 1332(d)(5)(A); and

    b.   Because the Class Action Complaint alleges that "the members of the class exceeds one thousand (1,000) individuals," (Class Action Complaint at 8 ¶ 22), the number of members of all proposed plaintiff classes in the aggregate is not less than 100. <u>See</u> 28 U.S.C. § 1332(d)(5)(B).

6.    Nor do any of the potential exceptions to this Court's original jurisdiction prescribed in 28 U.S.C. § 1332(d)(9) apply to the Class Action. Specifically, the Class Action Complaint does not state, much less "solely involve," any claim:

    a.   "[C]oncerning a covered security as defined under 16(f)(3) of the Securities Act of 1933 (15 U.S.C. 78p(f)(3) and section 28 (f)(5)(E) of the Securities Exchange Act of 1934 (15 U.S.C. 78bb(f)(5)(E))." <u>See</u> 28 U.S.C. § 1332(d)(9)(A);

    b.   "[T]hat relates to the internal affairs or governance of a corporation or other form of business enterprise and that arises under or by virtue of the laws of the State in which such corporation or business enterprise is incorporated or organized." <u>See</u> 28 U.S.C. § 1332(d)(9)(B); or

    c.   "[T]hat relates to the rights, duties (including fiduciary duties), and obligations related to or created by or pursuant to any security (as defined under section 2(a)(1) of the Securities Act of 1933 (15 U.S.C. 77b(a)(1)) and the regulations issued thereunder)." <u>See</u> 28 U.S.C. § 1332(d)(9)(C).

7.      Upon information and belief, the Class Action does not involve the statutorily delineated circumstances which would either permit, see 28 U.S.C. § 1332(d)(3), or require, see 28 U.S.C. § 1332(d)(4), this Court to decline to exercise its original jurisdiction.

8.      Although the Class Action Complaint alleges that two of the defendants (RAM Medical, Inc. and C.R. Bard, Inc.) are citizens of the State of New Jersey, (Class Action Complaint at 4 ¶ 10 and 6 ¶ 17), removal to this Court is appropriate because "[a] class action may be removed … without regard to whether any defendant is a citizen of the State in which the action is brought." See 28 U.S.C. § 1453(b).

9.      Removal to this Court is also appropriate "without the consent of all defendants." See 28 U.S.C. § 1453(b). In any event, with the exception of defendant Amerimed Corp., all defendants, through their respective counsel, have informed counsel for MMS that they join in this Notice of Removal.

10.      Another purported class action against the same defendants (with the exception of C.R. Bard, Inc.) regarding the same or similar subject matter and entitled Bowman v. RAM Medical , Inc., et al., is pending in this Court before the Honorable Dennis M. Cavanaugh, U.S.D.J. under Civil Action No. 10-4403 (DMC) (MF). Accordingly, MMS requests that this Class Action be assigned to Judge Cavanaugh pursuant to Local Civil Rule 40.1(c).

WHEREFORE, MMS removes the Class Action to the United States District Court, District of New Jersey and requests that the Class Action be assigned to Judge Cavanaugh.

ARSENEAULT WHIPPLE FASSETT & AZZARELLO, LLP
Attorneys for Defendant MMS-A Medical Supply Co.

By:      /s/ John C. Whipple

By:      /s/ David W. Fassett

Dated: December 19, 2011

# Exhibit A

**BRITCHER, LEONE & ROTH, L.L.C.**
175 Rock Road
Glen Rock, NJ 07452
(201) 444-1644
Attorneys for the Plaintiff

DATE WRIT SERVED

This _____

By S.D.S _____

---

IRENE KIRK CALO, individually and on
behalf of all others similarly situated,

        Plaintiff,

v.

RAM MEDICAL, INC., AMERIMED
CORP., HENRY SCHEIN, INC.,
MARATHON MEDICAL CORP.,
MEDLINE INDUSTRIES, MMS-A
MEDICAL SUPPLY CO., Q-MED CORP.,
C.R. BARD, INC., and ABC MFG,. 1-20,

        Defendants.

: SUPERIOR COURT OF NEW JERSEY
: LAW DIVISION: PASSAIC COUNTY
: DOCKET NO. PAS-L-4679-11
:
:
:
: **SUMMONS**
:
:
:
:
:
:
:
:
:
:
:
:

---

To:    Managing Agent
       MMS - A Medical Supply Company
       200 Seaview Drive
       Secaucus, NJ 07094

    The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New

Jersey. The Complaint attached to this summons states the basis for this lawsuit. If you dispute

this Complaint, you or your attorney must file a written answer or motion and proof of service with

the deputy clerk of the Superior Court in the county listed above within 35 days from the date you

received this Summons, not counting the date you received it. (The address of each deputy clerk

of the Superior Court is provided.) If the Complaint is one in foreclosure, then you must file your

written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice

Complex, CN 971, Trenton, New Jersey 08625-0971. A filing fee payable to the Clerk of the

Superior Court and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $135 and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

If you cannot afford an attorney, you may call the Legal Services office in the county where you live. A list of these offices is provided. If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A list of these numbers is also provided.

/S/Jennifer M. Perez
Jennifer M. Perez
Clerk of the Superior Court

Dated: October 21, 2011

**ATLANTIC COUNTY:**
Deputy Clerk of the Superior Court
Civil Division, Direct Filing
1201 Bacharach Blvd., First Floor
Atlantic City, New Jersey 08401
LAWYER REFERRAL
(609) 345-3444
LEGAL SERVICES
(609) 348-4200

**BERGEN COUNTY:**
Deputy Clerk of the Superior Court
Case Processing Section, Room 119
Justice Center, 10 Main Street
Hackensack, New Jersey 07601-0769
LAWYER REFERRAL
(201) 488-0044
LEGAL SERVICES
(201) 487-2166

**BURLINGTON COUNTY:**
Deputy Clerk of the Superior Court
Central Processing Office
Attn: Judicial Intake
First F. Courts Facility
49 Rancocas Road
Mt. Holly, New Jersey 08060
LAWYER REFERRAL
(609) 261-4862
LEGAL SERVICES
(609) 261-1088

**CAPE MAY COUNTY:**
Deputy Clerk of the Superior Court
Central Processing Office
9 Main Street
Box DN-209
Cape May Court House, New Jersey 08210
LAWYER REFERRAL
(609) 463-0313
LEGAL SERVICES
(609) 465-3001

**CUMBERLAND COUNTY:**
Deputy Clerk of the Superior Court
Civil Case Management Office
Broad & Fayette Streets, P.O. Box 615
Bridgeton, New Jersey 08302
LAWYER REFERRAL
(609) 692-6207
LEGAL SERVICES
(609) 451-0003

**ESSEX COUNTY:**
Deputy Clerk of the Superior Court
237 Hall of Records
465 Dr. Martin Luther King, Jr. Blvd.
Newark, New Jersey 07102
LAWYER REFERRAL
(201) 622-6207
LEGAL SERVICES
(201) 624-4500

**GLOUCESTER COUNTY:**
Deputy Clerk of the Superior Court
Civil Case Management Office
Attn: Intake
First Floor, Court House
1 North Broad Street, P.O. Box 129
Woodbury, New Jersey 08096
LAWYER REFERRAL
(609) 848-4589
LEGAL SERVICES
(609) 848-5360

**HUDSON COUNTY:**
Deputy Clerk of the Superior Court
Superior Court, Civil Records Department
Brennan Court House - 1st Floor
583 Newark Avenue
Jersey City, New Jersey 07306
LAWYER REFERRAL
(201) 798-2727
LEGAL SERVICES
(201) 792-6363

**HUNTERDON COUNTY:**
Deputy Clerk of the Superior Court
Civil Division
65 Park Avenue
Flemington, New Jersey 08862
LAWYER REFERRAL
(609) 735-2611
LEGAL SERVICES
(609) 782-7979

**MERCER COUNTY:**
Deputy Clerk of the Superior Court
Local Filing Office, Court House
175 South Broad Street, P.O. Box 8068
Trenton, New Jersey 08650
LAWYER REFERRAL
(609) 585-6200
LEGAL SERVICES
(609) 695-6249

**MIDDLESEX COUNTY:**
Deputy Clerk of the Superior Court
Administration Building
Third Floor
1 Kennedy Square, P.O. Box 2633
New Brunswick, New Jersey 08903-2633
LAWYER REFERRAL
(908) 828-0053
LEGAL SERVICES
(908) 249-7600

**MONMOUTH COUNTY:**
Deputy Clerk of the Superior Court
71 Monument Park
P.O. Box 1262
Court House, East Wing
Freehold, New Jersey 07728-1262
LAWYER REFERRAL
(908) 431-5544
LEGAL SERVICES
(908) 866-0020

**MORRIS COUNTY:**
Deputy Clerk of the Superior Court
Civil Division
30 Schuyler Place, P.O. Box 910
Morristown, New Jersey 07960-0910
LAWYER REFERRAL
(201) 267-5882
LEGAL SERVICES
(201) 285-6911

**OCEAN COUNTY:**
Deputy Clerk of the Superior Court
Court House, Room 119
118 Washington Street
Toms River, New Jersey 08754
LAWYER REFERRAL
(908) 240-3666
LEGAL SERVICES
(908) 341-2727

**PASSAIC COUNTY:**
Deputy Clerk of the Superior Court
Civil Division
Court House
77 Hamilton Street
Paterson, New Jersey 07505
LAWYER REFERRAL
(201) 278-9223
LEGAL SERVICES
(201) 345-7171

**SALEM COUNTY:**
Deputy Clerk of the Superior Court
92 Market Street, P.O. Box 18
Salem, New Jersey 08079
LAWYER REFERRAL
(609) 678-8363
LEGAL SERVICES
(609) 451-0003

**SOMERSET COUNTY:**
Deputy Clerk of the Superior Court
Civil Division Office
New Court House, 3rd Floor
P.O. Box 3000
Somerville, New Jersey 08876
LAWYER REFERRAL
(908) 685-2323
LEGAL SERVICES
(908) 231-0840

**SUSSEX COUNTY:**
Deputy Clerk of the Superior Court
Sussex County Judicial Center
43-47 High Street
Newton, New Jersey 07860
LAWYER REFERRAL
(201) 267-5882
LEGAL SERVICES
(201) 383-7400

**UNION COUNTY:**
Deputy Clerk of the Superior Court
1st Floor, Court House
2 Broad Street
Elizabeth, New Jersey 07207-6073
LAWYER REFERRAL
(908) 353-4715
LEGAL SERVICES
(908) 354-4340

**WARREN COUNTY:**
Deputy Clerk of the Superior Court
Civil Division Office
Court House
Belvidere, New Jersey 07823-1500
LAWYER REFERRAL
(201) 267-5882
LEGAL SERVICES
(908) 475-2010

PASSAIC SUPERIOR COURT
PASSAIC COUNTY COURTHOUSE
77 HAMILTON STREET
PATERSON          NJ 07505

                                    TRACK ASSIGNMENT NOTICE

COURT TELEPHONE NO. (973) 247-8176
COURT HOURS

                    DATE:    OCTOBER 17, 2011
                    RE:      CALO VS RAM MEDICAL INC
                    DOCKET:  PAS L -004679 11

     THE ABOVE CASE HAS BEEN ASSIGNED TO:   TRACK 3.

     DISCOVERY IS    450 DAYS AND RUNS FROM THE FIRST ANSWER OR 90 DAYS
FROM SERVICE ON THE FIRST DEFENDANT, WHICHEVER COMES FIRST.

     THE PRETRIAL JUDGE ASSIGNED İS:  HON RANDAL C. CHIOCCA

     IF YOU HAVE ANY QUESTIONS, CONTACT TEAM      003
AT:  (973) 247-8198 EXT 8198.

     IF YOU BELIEVE THAT THE TRACK IS INAPPROPRIATE YOU MUST FILE A
 CERTIFICATION OF GOOD CAUSE WITHIN 30 DAYS OF THE FILING OF YOUR PLEADING.
    PLAINTIFF MUST SERVE COPIES OF THIS FORM ON ALL OTHER PARTIES IN ACCORDAN
WITH  R.4:5A-2.
                    ATTENTION:

                              ATT: E DREW BRITCHER
                              BRITCHER LEONE & ROTH LLC
                              175 ROCK ROAD
                              GLEN ROCK       NJ 07452

JURMATI

**BRITCHER, LEONE & ROTH, L.L.C.**
175 Rock Road
Glen Rock, NJ 07452
(201) 444-1644
Attorneys for the Plaintiff

| | |
|---|---|
| IRENE KIRK CALO, individually and on Behalf of all others similarly situated, | : SUPERIOR COURT OF NEW JERSEY<br>: LAW DIVISION: PASSAIC COUNTY<br>:<br>: DOCKET NO. PAS-L-4679-11 |
| Plaintiff, | : |
| v. | : **CLASS ACTION COMPLAINT, JURY**<br>: **DEMAND, AND DESIGNATION OF**<br>: **TRIAL COUNSEL** |
| RAM MEDICAL, INC., AMERIMED CORP., HENRY SCHEIN, INC., MARATHON MEDICAL CORP., MEDLINE INDUSTRIES, MMS-A MEDICAL SUPPLY CO., Q-MED CORP., C.R. BARD, INC., and ABC MFG., 1-20, | :<br>:<br>:<br>:<br>:<br>: |
| Defendants. | : |

Plaintiff, on behalf of herself and all other similarly situated, by her undersigned counsel, upon knowledge as to her own acts and upon information and belief as to defendants and their actions, brings the following Class-Action Complaint against Defendants RAM Medical, Inc., AmeriMed Corporation, Henry Schein, Inc., Marathon Medical Corporation, Medline Industries, MMS-A Medical Supply Company, Q-Med Corporation, C.R. Bard, Inc., and other fictitiously named parties (collectively "Defendants"), and allege as follows:

## NATURE OF THE ACTION

1.    This is a class action for declaratory judgment, injunctive relief, reimbursement of losses sustained and damages, alleging that Defendants' marketing, distribution, and sale of its

polypropylene surgical mesh ("surgical mesh") is false, misleading, inaccurate, deceptive, and represents an unconscionable commercial practice.

2.      Throughout the relevant time period, Defendants manufactured or caused to be manufactured, marketed, distributed or sold surgical mesh while (1) representing the product with the C.R. Bard, Inc. ("Bard") brand name as if having been manufactured by Bard; (2) representing that the product was sterile; (3) representing that the product had been approved for surgical use by the United States Food and Drug Administration ("FDA"); and, (4) representing that the product was indicated for a specific surgical use.

3.      Surgical mesh is regularly used during surgical procedures to reinforce soft tissue in the body where weakness exists, such as in the repair of hernias and chest wall defects.

4.      The FDA has determined that surgical mesh manufactured or caused to be manufactured, marketed, distributed or sold by Defendant is counterfeit.  The counterfeit products were labeled and sold as "Bard" brand surgical mesh but, upon information and belief, were counterfeits made in the Republic of China.

5.      According to the FDA, RAM Medical, Inc., distributed the counterfeit surgical mesh between October 2008 and October 2009, and the counterfeit surgical mesh was affixed with genuine Bard lot numbers.  The affected surgical mesh contained at least the following Bard lot numbers, and may have included other not yet known:  Lot 48HVS036, Lot 43APD007, Lot HUSD0629, Lot HURL0336, Lot 43HPD027, Lot 43HPD032, Lot 43HPD034, Lot HUSG0540, Lot 43HDP027, Lot HUSE0532, Lot 43LPD507, Lot HUSF0763, Lot 43IOD011, Lot 43IPD038, and Lot 43FQD327.

6.      Upon information and belief, Defendant RAM Medical, Inc. distributed the counterfeit surgical mesh through Defendants AmeriMed Corporation, Henry Schein, Inc., Marathon Medical Corporation, Medline Industries, MMS-A Medical Supply Company, Q-Med Corporation, C.R. Bard, Inc., and ABC Mfgs. 1-20.

7.      Plaintiff's claims against Defendants include (1) violations of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 et seq., (2) unjust enrichment, (3) breach of express warranties, (4) breach of the implied warranty of merchantability, and (5) breach of the implied warranty of fitness for a particular purpose.

## PARTIES

**Plaintiff**

8.      Plaintiff Irene Kirk Calo is, and at all times relevant hereto has been, a resident of the State of North Carolina, and is over the lawful age of majority.  She presently resides at 1038 Upper Spencer Mountain Road in the Town of Stanley, County of Gaston and State of North Carolina.  On or about October 21, 2009, Plaintiff Calo underwent a laparoscopic adjustable gastric banding procedure at Lexington Medical Center at 2720 Sunset Boulevard, City of West Columbia, and State of South Carolina.  Dr. Marc Antonetti, M.D. of Riverside Surgical Group located at 146 North Hospital Drive, City of West Columbia, and State of South Carolina performed the procedure.  The procedure was performed with a surgical mesh product — Defendants' counterfeit surgical mesh — that was implanted in Plaintiff.

9.      Plaintiff is filing this action as a Class Action pursuant to Rule 32 of the New Jersey Rules of Court on behalf of herself and all consumers in the United States who had Defendants' counterfeit surgical mesh surgically implanted from September 1, 2007 until the present day.

3

Specifically excluded from this Class are Defendants, and the officers, directors, employees, affiliated, subsidiaries, legal representatives, heirs, successors, and assigns of Defendants, together with any immediate family member of any officer, director, or employee of said companies. Also excluded from the Class are any Judges presiding over this action and members of their immediate families, and any counsel for any Defendants, counsels' staff, and immediate families.

**Defendants**

10.     Defendant RAM Medical, Inc. ("RAM") is a Delaware Corporation with its headquarters and principal place of business located at 4 Haul Road in the Township of Wayne, County of Passaic and State of New Jersey.  RAM distributes medical products throughout the United States, including the States of New Jersey, North Carolina, and South Carolina, and is the manufacturer, marketer, distributor, or seller of the counterfeit surgical mesh that were unlawfully marketed and distributed to consumers, and which was implanted in Plaintiff.  On March 5, 2010, RAM Medical, Inc. initiated a voluntary recall, classified by the FDA as a Class I recall, of one lot of counterfeit surgical mesh.  On March 15, 2010, RAM Medical expanded the recall to include Lot Numbers:   Lot 48HVS036, Lot 43APD007, Lot HUSD0629, Lot HURL0336, Lot 43HPD027, Lot 43HPD032, Lot 43HPD034, Lot HUSG0540, Lot 43HDP027, Lot HUSE0532, Lot 43LPD507, Lot HUSF0763, Lot 43IOD011, Lot 43IPD038, and Lot 43FQD327.

11.     Defendant AmeriMed Corporation ("AmeriMed") is a Delaware Corporation with its headquarters and principal place of business located in the City and County of Denver, State of Colorado.  AmeriMed sells medical supplies to hospitals, physicians, medical laboratories, and

4

retail pharmacies (collectively "healthcare providers") throughout the United States, including the States of New Jersey, North Carolina, and South Carolina.  Upon information and belief, defendant AmeriMed sold Defendants' counterfeit surgical mesh products to healthcare providers for implantation into consumers, including Plaintiff.

12.     Defendant Henry Schein, Inc., ("Henry Schein") is a Delaware Corporation with its headquarters and principal place of business in the Hamlet of Melville, Town of Huntington, County of Suffolk (Long Island), and State of New York.  Henry Schein purports to be the largest distributor of healthcare products and services to medical and dental service providers worldwide, including the States of New Jersey, North Carolina, and South Carolina.  Upon information and belief, Defendant Henry Schein sold Defendants' counterfeit surgical mesh products to healthcare providers for implantation into consumers, including Plaintiff.

13.     Defendant Marathon Medical Corporation ("Marathon") is a Texas Corporation with its headquarters and principal place of business in the City of  Commerce City, County of Adams, and State of Colorado.  Marathon sells and distributes medical products throughout the United States, including the States of New Jersey, North Carolina, and South Carolina.  Upon information and belief, Defendant Marathon sold Defendants' counterfeit surgical mesh products to healthcare providers for implantation into consumers, including Plaintiff.

14.     Defendant Medline Industries ("Medline") is an Illinois Corporation with its headquarters and principal place of business in the Village of Mundelein, County of Lake, and State of Illinois. Medline purports to be America's largest privately held national manufacturer and distributor of health care supplies and services.  Medline sells and distributes medical supplies throughout the United States, including the States of New Jersey, North Carolina, and South

5

Carolina. Upon information and belief, Defendant Medline sold Defendants' counterfeit surgical mesh products to healthcare providers for implantation into consumers, including Plaintiff.

15.     Defendant MMS-A Medical Supply Company ("MMS") is a Missouri Corporation with its headquarters and principal place of business in Earth City, County of St. Louis, and State of Missouri. MMS sells medical supplies to healthcare providers throughout the United States, including the States of New Jersey, North Carolina, and South Carolina. Upon information and belief, Defendant MMS sold Defendants' counterfeit surgical mesh products to healthcare providers for implantation into consumers, including Plaintiff.

16.     Defendant Q-Med Corporation ("Q-Med") is a Florida Corporation with its headquarters and principal place of business in the City of Fort Lauderdale, County of Broward, and State of Florida. Q-med sells medical supplies to healthcare providers throughout the United States, including the States of New Jersey, North Carolina, and South Carolina. Upon information and belief, Defendant MMS sold Defendants' counterfeit surgical mesh products to healthcare providers for implantation into consumers, including Plaintiff.

17.     Defendant C.R. Bard, Inc. ("Bard") is a New Jersey Corporation with its headquarters and principal place of business in Murray Hill, County of Union and State of New Jersey. In addition to being an S & P 500 company, Bard purports to be a leading multinational developer, manufacturer, and marketer of innovative, life-enhancing medical technologies in the product fields of vascular, urology, oncology, and surgical specialty. Upon information and belief, Defendant Bard's actions or inactions allowed or assisted in the manufacture, design, and/or distribution of the Defendants' counterfeit surgical mesh products to healthcare providers for implantation into consumers, including Plaintiff.

6

18.     ABC Mfgs. 1-20 are named fictitiously herein due to plaintiff's lack of information and knowledge as to the true identity of said ABC Mfg. 1-20. At such time as the plaintiff learns the true identity of ABC Mfg. 1-20, this Class Action Complaint will be amended to reflect the same.

19.     ABC Mfg. 1-20 are corporations, partnerships, sole proprietorships, companies, individuals or other entities which are either agents, servants, employees, independent contractors, subsidiaries, parent corporations or other legal entities that were hired, ordered, assigned or otherwise directed by Defendants RAM Medical, Inc., AmeriMed Corporation, Henry Schein, Inc., Marathon Medical Corporation, Medline Industries, MMS-A Medical Supply Company, Q-Med Corporation and/or Bard, Inc., with the duty of designing, manufacturing, selling, controlling, constructing, operating and/or maintaining the production, design, advertising, and/or marketing of the surgical meshes or other similar medical device manufactured by the defendants for the purpose of reinforcing soft tissue such as in hernia repairs and chest wall defects in the patient-consumer. The surgical meshes bearing the aforementioned codes and lot numbers were found to be counterfeit.

20.     At all relevant times, Defendants were engaged in the business of manufacturing, marketing, distributing, supplying, or selling medical supplies and products, including counterfeit surgical mesh and, as such, Defendants are "persons" as defined under the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 et seq.

## CLASS ACTION ALLEGATIONS

21.     Subject to the exclusions set forth in Paragraph 9 above, Plaintiff brings this Action on behalf of herself and all other similarly situated persons in the United States pursuant to Rule 32

of the New Jersey Rules of Court. Plaintiff is a member of this Class and seeks to represent the Class defined as follows:

> All persons in the United States who had Defendants' counterfeit surgical mesh surgically implanted from September 1, 2007 until the present time.

22.    The Class is so numerous that joinder of all members is impracticable. While the exact number of Class members is presently unknown and can only be ascertained through appropriate discovery, Plaintiff believes that the members of the Class exceeds one thousand (1,000) individuals.

23.    Common questions of law and fact exist as to all members of the Class and predominated over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

    a.    Whether Defendants' representation of their counterfeit surgical mesh as having been manufactured by Bard is false, misleading, inaccurate, deceptive, and represents an unconscionable commercial practice.

    b.    Whether Defendants' representation of their counterfeit surgical mesh as being a sterile product is false, misleading, inaccurate, deceptive, and represents an unconscionable practice.

    c.    Whether Defendants' representations of their counterfeit surgical mesh as having been approved for surgical use by the FDA is false, misleading, inaccurate, deceptive, and represents an unconscionable commercial practice.

8

d. Whether Defendants' representations of their counterfeit surgical mesh as having been indicated for a specific surgical use is false, misleading, inaccurate, deceptive, and represents an unconscionable commercial practice.

e. Whether Defendant failed to disclose that their counterfeit surgical mesh was not manufactured by Bard.

f. Whether Defendants failed to disclose that their counterfeit surgical mesh was not sterile.

g. Whether Defendants failed to disclose that the United States Food and Drug Administration did not approve their counterfeit surgical mesh.

h. Whether Defendants failed to disclose that their counterfeit surgical mesh was not indicted for surgical use.

i. Whether Defendants expressly and/or impliedly warranted that Bard manufactured their counterfeit surgical mesh.

j. Whether Defendants expressly and/or impliedly warranted that their counterfeit surgical mesh was sterile.

k. Whether Defendants expressly and/or impliedly warranted that the United States Food and Drug Administration approved their counterfeit surgical mesh.

l. Whether Defendants expressly and/or impliedly warranted that their counterfeit surgical mesh was indicated for surgical use.

m. Whether Defendants breached their express or implied warranties.

n. Whether Defendants have been unjustly enriched as a result of their unlawful business practices.

9

o. Whether the Defendants' actions or inactions allowed the perpetuation of a fraud.

p. Whether Defendants' actions as described herein in violate the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 et seq.

q. Whether Defendants should be required to make restitution, disgorge profits, reimburse losses, pay damages, and pay treble damages as a result of the aforementioned practices.

24.   All common questions are capable of being resolved through the same factual occurrences as specifically and/or generally alleged herein.

25.   Plaintiff's claims are typical of the claims of the members of the Class as all the members of the Class are similarly affected by Defendants' wrongful conduct. Each of the plaintiffs claim that they have sustained physical, mental, and/or emotional injuries, fright, inconvenience and interruption of or intrusion into their personal lives, and economic damages including loss of income, and that they continue to suffer harm because of defendants' wrongful conduct in violation of the law, as alleged herein.

26.   Plaintiff will fairly and adequately protect the interests of the members of the Class, have no claims or interests antagonistic to those of the members of the Class, and have retained counsel competent and experienced in class action litigation, including complex toxic tort, products liability litigation, and mass accident class actions.

27.   The prosecution of separation actions by Plaintiffs and individual Class members would create a risk of inconsistent or varying adjudications on the common issues of fact and law that relate to this action.

10

28.    A class action is the appropriate method for the fair and efficient adjudication of this controversy for the following reasons:

    a.  Without a class action, the Plaintiff Class will continue to suffer damages and Defendants' violations or the law or laws will go without a remedy to the Plaintiff Class;

    b.  Given (i) the substantive complexity of this litigation; (ii) the size of individual Plaintiff Class members' claims; and, (iii) the limited resources of the Plaintiff Class members; few, if any, Plaintiff Class members could afford to seek legal redress individually for the wrongs Defendants have committed against them;

    c.  A Class Action is superior to other available methods for the fair and efficient adjudication of this litigation, since individual joinder of all members of each class in impracticable.  Even if any group of class members themselves could afford individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed.  Individual litigation magnifies the delay and expense to all parties and to the court system, of resolving the controversies engendered by defendants' product.  By contrast, the class action device presents far and fewer management difficulties and provides the benefits of unitary adjudication, economies of scale, and comprehensive supervision by a single court.

    d.  This action will foster an orderly and expeditious administration of Plaintiff Class members' claims, economies of time, effort, and expense, and uniformity of decision;

    e.  Inferences and presumptions of materiality and reliance are available to obtain class-wide determinations of those elements within the Plaintiff Class members' claim, as

are accepted methodologies for class-wide proof of damages; alternatively, upon adjudication of Defendants' common liability, the Court can efficiently determine the claims of the individual Plaintiff Class members; and this action presents no difficulty that would impede the Court's management of it as a class action, and a class action is the best, if not the only, available means by which members of the Plaintiff Class can seek legal redress for the harm caused to them by the Defendants.

## STATEMENT OF FACTS

29.     Plaintiffs repeat and re-allege the allegations set forth above in Paragraphs 1-28, as if fully restated herein and further allege:

30.     Defendants, and each of them, are in the business of manufacturing or causing to be manufactured, marketing, distributing, or selling the counterfeit surgical mesh at issue in this litigation.

31.     At all relevant times herein, Defendants manufactured, marketed, distributed, and sold their surgical mesh as being a sterile, Bard-manufactured product.  In addition, at all relevant times herein, Defendants represented that their surgical mesh was approved for use by the United States Food and Drug Administration ("FDA") and specifically indicated for surgical use.

32.     On or about October 21, 2009, Plaintiff Irene Kirk Calo underwent a laparoscopic adjustable gastric banding procedure at Lexington Medical Center located at 2720 Sunset Blvd. West Columbia, South Carolina.  During the surgical procedure, Dr. Marc Antonetti implanted the counterfeit surgical mesh in Plaintiff's abdomen.

33.     At the time Defendants' counterfeit surgical mesh was implanted in Plaintiff's abdomen, Plaintiff and her healthcare providers believed that Defendant's counterfeit surgical mesh was (1)

12

a Bard-manufactured product; (2) a sterile surgical product; (3) approved by the FDA; and, (4) indicated for surgical use.

34.     At the time of Plaintiff's surgery, Plaintiff and her healthcare providers were willing to and did pay for a surgical mesh product they believed to be (1) a Bard-manufactured product; (2) a sterile surgical product; (3) a surgical product approved for use by the FDA; and, (4) a product indicated for surgical use.

35.     Like Plaintiff, members of the Class were implanted with counterfeit surgical mesh manufactured, marketed, distributed, and/or sold by Defendants during the relevant time period.

36.     On March 5, 2010, Defendant RAM Medical, Inc. initiated a voluntary recall of one lot of counterfeit surgical mesh.

37.     On March 15, 2010, RAM Medical expanded the recall to include fifteen (15) lots of the counterfeit surgical mesh.

38.     On June 2, 2010, the FDA classified Defendant RAM Medical's recall as a Class I recall, a designation reserved for the most serious types of recalls.

39.     In classifying the recall as "Class I," the FDA concluded that, contrary to representations on the package, the counterfeit surgical mesh were not Bard-manufactured products. The FDA further determined that, despite being labeled as such, the counterfeit products were not sterile. Finally the FDA concluded that the counterfeit surgical mesh did not meet the authentic product's specifications.

40.     In contrast to Defendants' representations, the surgical mesh products manufactured, marketed, distributed, and sold by Defendants (1) were not Bard-manufactured products; (2)

13

were not sterile; (3) were not approved by the FDA; and, (4) were not appropriate for surgical use.

41.     In the condition in which Defendants sold their counterfeit surgical mesh, the product had no value.

42.     On July 15, 2010, Plaintiff received a letter from Lexington Medical Center, informing her that the surgical mesh implanted during her October 2009 surgery was counterfeit surgical mesh.

43.     Had Plaintiff and her healthcare providers known that Defendant's surgical mesh was not as represented by Defendants, neither Plaintiff nor her healthcare providers would have purchased the surgical mesh for use during the surgical procedure.

44.     As a result of their marketing, advertising, and promotion, Defendants were able to and did charge a premium price for their counterfeit surgical mesh -- a price higher than that charged for similar products.  In the condition in which Defendants' counterfeit surgical mesh was sold, the counterfeit surgical mesh was of no value whatsoever to Plaintiff or members of the Class.

45.     As a result of Defendants' false, misleading, inaccurate, deceptive and unconscionable business and commercial practices, Plaintiff and members of the Class suffered an ascertainable loss in that they purchased a product they believed to be (1) a Bard-manufactured product; (2) a sterile product; (3) a product approved by the FDA; and, (4) a product indicated for surgical use, but were provided with a product that lacked all said attributes and was, therefore, without value.

46.     As a result of Defendants' false, misleading, inaccurate, deceptive and unconscionable commercial practices, Plaintiff and members of the Class suffered an ascertainable loss in that they will incur costs to repair the damages caused by Defendants' unlawful activity.

<u>COUNT I</u>

**VIOLATION OF THE NEW JERSEY CONSUMER FRAUD ACT**

47.     Plaintiffs repeat and re-allege each and every allegation above, as if set forth in full herein.

48.     The New Jersey Consumer Fraud Act, <u>N.J.S.A.</u> 56:8-2, provides in relevant part:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice; provided, however, that nothing herein contained shall apply to the owner or publisher of newspapers, magazines, publications or printed matter wherein such advertisement appears, or to the owner or operator of a radio or television station which disseminates such advertisement when the owner, publisher, or operator has no knowledge of the intent, design or purpose of the advertiser.
>
> [<u>N.J.S.A.</u> 56:8-2.]

49.     Defendants' business practices of marketing, advertising, and promoting its counterfeit surgical mesh in a false, misleading, inaccurate and deceptive manner by misrepresenting its surgical mesh as (1) a Bard-manufactured product; (2) a sterile product; (3) a product approved by the FDA; and, (4) a product indicated for surgical use, constitutes the use by Defendants of unconscionable commercial business practices, deception, and misrepresentation, and therefore, constitutes multiple and separate violations of the New Jersey Consumer Fraud Act, <u>N.J.S.A.</u> 56:8-1 et seq.

15

50.     In marketing, advertising, promoting, distributing, and selling their counterfeit surgical mesh, Defendants made the material misrepresentations and omissions set forth in this Class Action Complaint in New Jersey, North Carolina, South Carolina, and elsewhere.

51.     Defendants misrepresented their products as (1) Bard-manufactured products; (2) sterile; (3) approved by the FDA; and, (4) indicated for surgical use, while failing to disclose the fact that their surgical mesh was counterfeit.

52.     Defendants' unlawful conduct set forth in this Class Action Complaint has the capacity to mislead or deceive consumers, including Plaintiff and members of the Class.

53.     Defendants' unconscionable commercial business practices, false promises, misrepresentations and omissions set forth in this Class Act Complaint are material in that they relate to matters which reasonable persons, including Plaintiff and members of the Class, would attach importance to in their purchasing decisions or conduct regarding the purchase of surgical mesh products.

54.     As a result of Defendants' practices as described herein, Plaintiff and members of the Class have suffered an ascertainable loss of money or property in that they purchased and paid for a product that was of no value.

55.     As a result of Defendants' practices as described herein, Plaintiff and members of the Class have suffered an ascertainable loss of money in that they will incur costs to repair the damages caused by Defendants' unlawful activity.

56.     **WHEREFORE** Plaintiff and members of the Class demand judgment against Defendants RAM Medical, Inc., AmeriMed Corporation, Henry Schein, Inc., Marathon Medical Corporation, Medline Industries, MMS-A Medical Supply Company, Q-Med Corporation, C.R.

16

Bard, Inc., and ABC Mfgs. 1-20., jointly, severally, or in the alternative for treble damages, punitive damages, interest thereon, attorney's fees, costs of suit and such other and further relief as the Court deems equitable and just.

## COUNT II

### UNJUST ENRICHMENT AND COMMON LAW RESTITUTION

57.     Plaintiff repeats and re-alleges each and every allegation above, as if set forth in full herein.

58.     As a result of Defendants' wrongful and deceptive conduct, Plaintiff and members of the Class have suffered a determent while Defendants have received a benefit.

59.     Plaintiff and members of the Class paid a premium price for Defendant's surgical mesh, represented to be (1) a Bard-manufactured product; (2) sterile; (3) a product approved by the FDA; and, (4) a product indicated for surgical use, but received something of lesser value--a surgical mesh that was counterfeit.

60.     Defendants received a benefit from Plaintiff and members of the Class in the form of the price paid for Defendants' counterfeit surgical mesh, a product that is no value to Plaintiff and members of the Class in the condition in which it was sold.

61.     Defendants should not be allowed to retain the price profits generated from the sale of products that were unlawfully marketed, advertised, and promoted.

62.     Allowing Defendants to retain these unjust profits would offend traditional notions of justice and fair play and induce companies to misrepresent key characteristics of their products in order to increase sales.

17

63.    Therefore, Defendants are in possession of funds which were wrongfully obtained from consumers and which should be disgorged as ill-gotten gains.

64.    **WHEREFORE** Plaintiff and members of the Class demand judgment against Defendants RAM Medical, Inc., AmeriMed Corporation, Henry Schein, Inc., Marathon Medical Corporation, Medline Industries, MMS-A Medical Supply Company, Q-Med Corporation, C.R. Bard, Inc., and ABC Mfgs. 1-20., jointly, severally, or in the alternative for treble damages, punitive damages, interest thereon, attorney's fees, costs of suit and such other and further relief as the Court deems equitable and just.

## COUNT III

### BREACH OF EXPRESS WARRANTY

65.    Plaintiff repeats and re-alleges each and every allegation above, as if set forth in full herein.

66.    Defendants expressly warranted in its marketing, advertising, distribution and sale of their surgical mesh, that their surgical mesh is (1) a Bard-manufactured product; (2) a sterile product; (3) a product approved by the FDA; and, (4) a product indicated for surgical use.

67.    Plaintiff and members of the Class purchased Defendants' surgical mesh based upon the above said express warranty. In fact, no consumer would have purchased said product if it were not a sterile, FDA-approved, Bard manufactured product intended for surgical use.

68.    Defendants breached their express warranty by selling a counterfeit surgical mesh that is not (1) a Bard-manufactured product; (2) sterile; (3) approved by the FDA; and, (4) indicated for surgical use.

18

69.     As a direct and proximate result of Defendants' breach of their express warranty, Plaintiff and members of the Class have been damaged in that they did not receive the product as specifically warranted.

70.     **WHEREFORE** Plaintiff and members of the Class demand judgment against Defendants RAM Medical, Inc., AmeriMed Corporation, Henry Schein, Inc., Marathon Medical Corporation, Medline Industries, MMS-A Medical Supply Company, Q-Med Corporation, C.R. Bard, Inc., and ABC Mfgs. 1-20., jointly, severally, or in the alternative for treble damages, punitive damages, interest thereon, attorney's fees, costs of suit and such other and further relief as the Court deems equitable and just.

## COUNT IV

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

71.     Plaintiffs repeat and re-allege each and every allegation above, as if set forth in full herein.

72.     Defendants manufacture, market, sell and distribute their surgical mesh.

73.     Defendants are merchants because they market, sell, and distribute their surgical mesh to Plaintiff and the Class.

74.     Defendants reasonably expected Plaintiff and members of the Class to use their counterfeit surgical mesh in an ordinary and foreseeable manner.

75.     Defendants impliedly warranted that the surgical mesh they manufactured, marketed, sold and distributed was (1) a Bard-manufactured product; (2) sterile; (3) approved by the FDA; and, (4) indicated for surgical use, and, in doing so, that the products were of merchantable quality.

19

Defendants did so with the intent to induce Plaintiff and members of the Class to purchase those products.

76.     Defendants breached their implied warranty of merchantability in that the surgical mesh was not of merchantable quality at the time of sale because the products were not (1) a Bard-manufactured; (2) sterile; (3) approved by the FDA; or  (4) indicated for surgical use, and therefore, were not as marketed, advertised, and promoted.

77.     Defendants had prior knowledge and notice of the inferior nature of their counterfeit surgical mesh at the time Defendants' counterfeit surgical mesh was sold.

78.     Had Plaintiff and the members of the Class known the true and accurate facts, they would not have purchased the counterfeit surgical mesh and would not have been wiling to pay the price Defendants charged for the product.

79.     As a direct and proximate result of Defendants' breach of implied warranty of merchantability, Plaintiff and members of the Class have been injured and suffered damages.

80.     **WHEREFORE** Plaintiff and members of the Class demand judgment against Defendants RAM Medical, Inc., AmeriMed Corporation, Henry Schein, Inc., Marathon Medical Corporation, Medline Industries, MMS-A Medical Supply Company, Q-Med Corporation, C.R. Bard, Inc., and ABC Mfgs. 1-20., jointly, severally, or in the alternative for treble damages, punitive damages, interest thereon, attorney's fees, costs of suit and such other and further relief as the Court deems equitable and just.

<u>COUNT V</u>

**BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE**

20

81.     Plaintiffs repeat and re-allege each and every allegation above, as if set forth in full herein.

82.     Defendants manufacture, market, distribute, and sell surgical mesh to Plaintiff and members of the Class.

83.     Defendants impliedly warranted that their surgical mesh was fit for the particular purpose of a sterile, FDA-approved product, indicated for surgical use in reinforcing soft tissue where weakness exists.

84.     Pursuant to the warranty, Defendants warranted that it would provide Plaintiff and members of the Class with a surgical mesh that is (1) a Bard-manufactured product; (2) a sterile product; (3) a product approved by the FDA; and, (4) a product indicated for surgical use.

85.     Defendants breached this implied warranty of fitness for a particular purpose because the counterfeit surgical mesh is not fit for the particular purpose for which it was intended.

86.     Defendants had prior knowledge and notice of the inferior nature of the counterfeit surgical mesh, and therefore, of its breaches of warranty of fitness for a particular purpose, but they took no action to remedy the inferiority or to cure the breach.

87.     As a direct and proximate result of Defendants' breaches of implied warranty of fitness, Plaintiff and members of the Class have been injured and suffered damages.

88.     **WHEREFORE** Plaintiff and members of the Class demand judgment against Defendants RAM Medical, Inc., AmeriMed Corporation, Henry Schein, Inc., Marathon Medical Corporation, Medline Industries, MMS-A Medical Supply Company, Q-Med Corporation, C.R. Bard, Inc., and ABC Mfgs. 1-20., jointly, severally, or in the alternative for treble damages,

21

punitive damages, interest thereon, attorney's fees, costs of suit and such other and further relief as the Court deems equitable and just.

## COUNT VI

### NEW JERSEY PRODUCTS LIABILITY ACT

89.     Plaintiffs repeat and re-allege each and every allegation above as though duly set forth in herein and at length.

90.     Defendants manufactured, marketed, distributed, and sold counterfeit surgical mesh, a product implanted in Plaintiff and members of the Class, which was not reasonably fit, suitable or safe for its intended purpose because it (a) deviated from the design specifications, formula, or performance standard of the manufacturer or from otherwise identical units manufactured to the same manufacturing specifications or formula, (b) failed to contain adequate warnings or instructions, or (c) was designed in a defective manner in violation of the New Jersey Products Liability Act, N.J.S.A. 2A:58C-1 et seq.

91.     As a direct and proximate result of Defendants' violation of the New Jersey Products Liability Act, Plaintiff and members of the Class have been injured and suffered damages.

92.     **WHEREFORE** Plaintiff and members of the Class demand judgment against Defendants RAM Medical, Inc., AmeriMed Corporation, Henry Schein, Inc., Marathon Medical Corporation, Medline Industries, MMS-A Medical Supply Company, Q-Med Corporation, C.R. Bard, Inc., and ABC Mfgs. 1-20., jointly, severally, or in the alternative for treble damages, punitive damages, interest thereon, attorney's fees, costs of suit and such other and further relief as the Court deems equitable and just.

## PRAYER FOR RELIEF

22

93.    Plaintiff, on her own behalf and on behalf of members of the Class, pray for the following relief:

    a.   An Order that this action be maintained as a class action and that plaintiff be appointed class representatives.

    b.   An Order appointed the undersigned counsel as class counsel in this action.

    c.   A declaration that the surgical mesh marketing, advertised, distributed, and sold by Defendant was/is counterfeit.

    d.   A declaration that Defendant's sale of counterfeit surgical mesh violates the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 et seq.

    e.   A declaration that Defendants breached expressed warranties, implied warranties of merchantability, and implied warranties of fitness in representing, marketing, advertising, and promoting its surgical mesh as (1) a Bard-manufactured product; (2) sterile; (3) approved by the United States Food and Drug Administration ("FDA"); and, (4) indicated for surgical use.

    f.   A declaration that Defendants have been unjustly enriched by its unlawful practices.

    g.   An Order directing Defendants to disgorge profits derived from its unlawful practices and to pay restitution to Plaintiff and all members of the Class.

    h.   An Order compelling Defendants to reimburse Plaintiff and all members of the Class in an amount equal to their ascertainable loss as described herein.

    i.   An Order directing Defendants to pay treble damages based upon the above-said violations of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 et seq.

23

j.  An Order directing Defendants to pay attorney fees and costs associated with this litigation and all such other relief available under New Jersey Law;

k.  Awarding such other and further relief as the Court may deem just and proper.

## JURY DEMAND

**PLEASE TAKE NOTICE** that Plaintiff demands that the issues herein be tried by a jury.

## DESIGNATION OF TRIAL COUNSEL

**E. DREW BRITCHER, ESQ.**, is hereby designated as trial counsel in the above-captioned matter.

BRITCHER, LEONE & ROTH, L.L.C.

By: _____
E. Drew Britcher, Esq.
175 Rock Road
Glen Rock, New Jersey 07452
(201) 444-1644

Dated: August 11, 2011

24

## CERTIFICATION PURSUANT TO R. 4:5-1

In accordance with Rule 4:5-1, I hereby certify that the matter in controversy in this action is not the subject of any pending action or arbitration and that no such action or arbitration is presently contemplated.

I hereby certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

BRITCHER, LEONE & ROTH, L.L.C.

By: _____
E. Drew Britcher, Esq.
175 Rock Road
Glen Rock, New Jersey 07452
(201) 444-1644

Dated: October 11, 2011

Appendix XII-B1



## CIVIL CASE INFORMATION STATEMENT (CIS)

Use for initial Law Division
Civil Part pleadings (not motions) under *Rule* 4:5-1
**Pleading will be rejected for filing, under *Rule* 1:5-6(c),**
**if information above the black bar is not completed**
**or attorney's signature is not affixed**

| FOR USE BY CLERK'S OFFICE ONLY |
|---|
| PAYMENT TYPE: ☐ CK ☐ CG ☐ CA |
| CHG/CK NO. |
| AMOUNT: |
| OVERPAYMENT: |
| BATCH NUMBER: |

| ATTORNEY / PRO SE NAME | TELEPHONE NUMBER | COUNTY OF VENUE |
|---|---|---|
| E. Drew Britcher, Esq. | (201) 444-1644 | Passaic |

| FIRM NAME (if applicable) | DOCKET NUMBER (when available) |
|---|---|
| Britcher, Leone & Roth, LLC | L 4679-11 |

| OFFICE ADDRESS | DOCUMENT TYPE |
|---|---|
| 175 Rock Road | Pleading (Complaint) |
| Glen Rock, New Jersey 07452 | JURY DEMAND ■ Yes ☐ No |

| NAME OF PARTY (e.g., John Doe, Plaintiff) | CAPTION |
|---|---|
| Irene Kirk Calo | Irene Kirk Calo v. RAM Medical, Inc., AmeriMed Corp., Henry Schein, Inc., Marathon Medical Corp., Medline Industries, MMS-A Medical Supply Co., Q-Med Corp, C.R. Bard, Inc., and ABC Mfg., 1-20 |

| CASE TYPE NUMBER (See reverse side for listing) | IS THIS A PROFESSIONAL MALPRACTICE CASE? ☐ YES ■ NO |
|---|---|
| 606 | IF YOU HAVE CHECKED "YES," SEE *N.J.S.A.* 2A:53 A -27 AND APPLICABLE CASE LAW REGARDING YOUR OBLIGATION TO FILE AN AFFIDAVIT OF MERIT. |

| RELATED CASES PENDING? ☐ YES ■ No | IF YES, LIST DOCKET NUMBERS |
|---|---|
| DO YOU ANTICIPATE ADDING ANY PARTIES (arising out of same transaction or occurrence)? ☐ Yes ■ No | NAME OF DEFENDANT'S PRIMARY INSURANCE COMPANY (if known) ☐ NONE ■ UNKNOWN |

### THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE.

CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

| DO PARTIES HAVE A CURRENT, PAST OR RECURRENT RELATIONSHIP? ☐ Yes ■ No | IF YES, IS THAT RELATIONSHIP: ☐ EMPLOYER/EMPLOYEE ☐ FAMILIAL | ☐ FRIEND/NEIGHBOR ☐ BUSINESS | ☐ OTHER (explain) |
|---|---|---|---|

DOES THE STATUTE GOVERNING THIS CASE PROVIDE FOR PAYMENT OF FEES BY THE LOSING PARTY? ☐ YES ■ No

USE THIS SPACE TO ALERT THE COURT TO ANY SPECIAL CASE CHARACTERISTICS THAT MAY WARRANT INDIVIDUAL MANAGEMENT OR ACCELERATED DISPOSITION

| DO YOU OR YOUR CLIENT NEED ANY DISABILITY ACCOMMODATIONS? ☐ Yes ■ No | IF YES, PLEASE IDENTIFY THE REQUESTED ACCOMMODATION |
|---|---|
| WILL AN INTERPRETER BE NEEDED? ☐ Yes ■ No | IF YES, FOR WHAT LANGUAGE? |

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b).

ATTORNEY SIGNATURE:



**Side 2**

# CIVIL CASE INFORMATION STATEMENT
## (CIS)
### Use for initial pleadings (not motions) under *Rule* 4:5-1

## CASE TYPES (Choose one and enter number of case type in appropriate space on the reverse side.)

### Track I - 150 days' discovery
151   NAME CHANGE
175   FORFEITURE
302   TENANCY
399   REAL PROPERTY (other than Tenancy, Contract, Condemnation, Complex Commercial or Construction)
502   BOOK ACCOUNT (debt collection matters only)
505   OTHER INSURANCE CLAIM (including declaratory judgment actions)
506   PIP COVERAGE
510   UM or UIM CLAIM (coverage issues only)
511   ACTION ON NEGOTIABLE INSTRUMENT
512   LEMON LAW
801   SUMMARY ACTION
802   OPEN PUBLIC RECORDS ACT (summary action)
999   OTHER (briefly describe nature of action)

### Track II - 300 days' discovery
305   CONSTRUCTION
509   EMPLOYMENT (other than CEPA or LAD)
599   CONTRACT/COMMERCIAL TRANSACTION
603N  AUTO NEGLIGENCE – PERSONAL INJURY (non-verbal threshold)
603Y  AUTO NEGLIGENCE – PERSONAL INJURY (verbal threshold)
605   PERSONAL INJURY
610   AUTO NEGLIGENCE – PROPERTY DAMAGE
621   UM or UIM CLAIM (includes bodily injury)
699   TORT – OTHER

### Track III - 450 days' discovery
005   CIVIL RIGHTS
301   CONDEMNATION
602   ASSAULT AND BATTERY
604   MEDICAL MALPRACTICE
606   PRODUCT LIABILITY
607   PROFESSIONAL MALPRACTICE
608   TOXIC TORT
609   DEFAMATION
616   WHISTLEBLOWER / CONSCIENTIOUS EMPLOYEE PROTECTION ACT (CEPA) CASES
617   INVERSE CONDEMNATION
618   LAW AGAINST DISCRIMINATION (LAD) CASES

### Track IV - Active Case Management by Individual Judge / 450 days' discovery
156   ENVIRONMENTAL/ENVIRONMENTAL COVERAGE LITIGATION
303   MT. LAUREL
508   COMPLEX COMMERCIAL
513   COMPLEX CONSTRUCTION
514   INSURANCE FRAUD
620   FALSE CLAIMS ACT
701   ACTIONS IN LIEU OF PREROGATIVE WRITS

### Centrally Managed Litigation (Track IV)
280   ZELNORM                                          290   POMPTON LAKES ENVIRONMENTAL LITIGATION
285   STRYKER TRIDENT HIP IMPLANTS                     291   PELVIC MESH/GYNECARE
288   PRUDENTIAL TORT LITIGATION                       292   PELVIC MESH/BARD
289   REGLAN                                           293   DEPUY ASR HIP IMPLANT LITIGATION

### Mass Tort (Track IV)
248   CIBA GEIGY                                       281   BRISTOL-MYERS SQUIBB ENVIRONMENTAL
266   HORMONE REPLACEMENT THERAPY (HRT)                282   FOSAMAX
271   ACCUTANE/ISOTRETINOIN                            284   NUVARING
274   RISPERDAL/SEROQUEL/ZYPREXA                       286   LEVAQUIN
278   ZOMETA/AREDIA                                    287   YAZ/YASMIN/OCELLA
279   GADOLINIUM                                       601   ASBESTOS

If you believe this case requires a track other than that provided above, please indicate the reason on Side 1,
in the space under "Case Characteristics.

### Please check off each applicable category ☐ Putative Class Action     ☐ Title 59